# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB<br>85 Second Street, 2nd Floor<br>San Francisco, CA 94105<br><br>Plaintiff,<br><br>v.<br><br>GINA MCCARTHY, in her official capacity as<br>Administrator of the United States Environmental<br>Protection Agency<br>Ariel Rios Building<br>1200 Pennsylvania Avenue, N.W.<br>Washington, DC 20460<br><br>Defendant. | Civ. No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I.      INTRODUCTION

1.      The Administrator of the United States Environmental Protection Agency ("Administrator" or " EPA") has failed to perform her non-discretionary under the Clean Air Act to issue a finding of failure by 13 States—Arizona, Indiana, Iowa, Kentucky, Louisiana, Michigan, Montana, New Hampshire, Ohio, Pennsylvania, Tennessee, West Virginia, and Wisconsin—to submit nonattainment area state implementation plan ("nonattainment SIP" or "NSIP") submittals and publish notice of that action in the Federal Register no later than six months after the April 6, 2015 deadline by which these states were required to submit a

1

nonattainment SIP for the primary national ambient air quality standard ("NAAQS") for sulfur dioxide ("$SO_2$") as revised on June 2, 2010. *See* 42 U.S.C. §7410(k)(1)(B). Specifically, the Administrator has failed to perform this mandatory duty with regard to designated nonattainment areas in these 13 states.

2. Although it is now well more than 6 months beyond the date by which these 13 states were required to submit SIPs that meet the requirements of sections 172(c) and 191-192 of the Clean Air Act and provide for attainment of the NAAQS as expeditiously as practicable but no later than October 4, 2018, the Administrator has yet to make any findings of failure to submit the requisite NSIPs. The Administrator is, therefore, violating her nondiscretionary duties under the Clean Air Act and, as a result, delaying health and welfare protections to which Plaintiff's members are entitled. Accordingly, Sierra Club seeks a declaration that the Administrator is in violation of the Clean Air Act and an order compelling the Administrator to issue the requisite findings of failure with regard to each of the outstanding nonattainment SIPs cited herein.

## II.   JURISDICTION

3. The instant action arises under the Clean Air Act, 42 U.S.C. §§ 7401 *et seq*. *See* 42 U.S.C. § 7410(k)(1)(B). This Court has jurisdiction over Sierra Club's claims pursuant to 42 U.S.C. § 7604(a)(2) and 28 U.S.C. §§ 1331, 1361. The relief requested by Plaintiff is authorized pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 1361, 2201, and 2202.

## III.   NOTICE

4. By certified letter dated October 15, 2015, Sierra Club provided the Administrator with written notice of Sierra Club's claim concerning EPA's failure to issue the findings of failure to submit nonattainment area SIP submittals described herein and of Sierra Club's intent to bring suit to remedy these Clean Air Act violations. Sierra Club provided notice pursuant to

42 U.S.C. § 7604(b) and 40 C.F.R. §§ 54.2, 54.3.  A copy of this notice is provided as Exhibit A to this Complaint.  More than 60 days have elapsed since Sierra Club gave such notice, and the Administrator has continued her failure to perform such nondiscretionary duties.

## IV.     VENUE

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1).  A substantial part of the events or omissions giving rise to Sierra Club's claim occurred in the District of Columbia.  Defendant Gina McCarthy is an officer of the United States, sued for acts and omissions in her official capacity, and her official residence is in the District of Columbia.  In addition, EPA has its principal office in the District of Columbia.

## V.     PARTIES

1.   Plaintiff Sierra Club is a "person" within the meaning of 42 U.S.C. § 7602(e).  As such, Sierra Club may commence a civil action under 42 U.S.C. § 7604(a).

2.      Sierra Club is the oldest and largest grassroots environmental group in the United States, with over 628,900 members nationally, including over 2,300 members in the District of Columbia; 12,400 members in Arizona; 8,000 members in Indiana; 5,400 members in Iowa; 5,000 members in Kentucky; 2,900 members in Louisiana; 17,800 members in Michigan; 2,200 members in Montana; 3,800 members in New Hampshire; 17,500 members in Ohio; 24,100 members in Pennsylvania; 6,800 members in Tennessee; 2,000 members in West Virginia; and 14,200 members in Wisconsin.  Sierra Club's mission is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; and to educate and enlist humanity to protect and restore the quality of the natural and human environment; and to use all lawful means to carry out these objectives.  Sierra Club performs this mission through advocacy, litigation, and educational outreach to its members and

3

state chapters. Sierra Club and its members are greatly concerned about the effects of $SO_2$ pollution on human health and the environment and have a long history of involvement in activities related to air quality.

3. Sierra Club members live, work, recreate, and conduct other activities in areas throughout the nation that have been designated nonattainment for the 2010 $SO_2$ NAAQS. Sulfur dioxide pollution in such areas adversely affects or threatens the health and welfare of Plaintiff's members. The acts and omissions of EPA alleged herein cause injury to Plaintiff's members by prolonging air quality conditions that adversely affect or threaten their health and welfare, and by nullifying or delaying measures and procedures mandated by the Clean Air Act to protect their health and welfare from sulfur dioxide pollution in places where they live, work, recreate and conduct other activities. Accordingly, the health, recreational, aesthetic, and procedural interests of Plaintiff and its members have been and continue to be adversely affected by the acts and omissions of EPA alleged herein.

4. The acts and omissions of EPA alleged herein further deprive Plaintiff and its members of procedural rights and protections to which they would otherwise be entitled, including, but not limited to, the right to enforce requirements of the Clean Air Act for preparation and implementation of plans to remedy violations of the revised $SO_2$ standard in nonattainment areas and the right to comment on and judicially challenge such plans.

5. For all the foregoing reasons, Sierra Club's interests and its members' interests have been, are being, and will continue to be, harmed by the Clean Air Act violations alleged in this Complaint. Granting the relief requested in this lawsuit would redress these injuries.

6. Defendant Gina McCarthy is the Administrator of the United States Environmental Protection Agency. In that role, Administrator McCarthy has been charged by Congress with the

4

duty to administer the Clean Air Act, including the mandatory duties at issue in this case. Gina McCarthy is sued in her official capacity.

## VI. LEGAL BACKGROUND

7. The Clean Air Act is, at its core, a directive to protect the public from harmful air pollution and enhance the public health and public welfare of the nation. *See* 42 U.S.C. § 7401(b)(1). Pursuant to this mandate, EPA is required to establish primary and secondary NAAQS for criteria pollutants in order to protect public health and welfare. 42 U.S.C. § 7409. Criteria pollutants are those pollutants that "cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare" and are emitted by "numerous or diverse mobile or stationary sources." 42 U.S.C. §§ 7408(a)(1)(A)-(B). The NAAQS establish maximum allowable concentrations in the air of these pollutants, including $SO_2$.

8. EPA must establish primary NAAQS at a level "requisite to protect the public health" with "an adequate margin of safety." 42 U.S.C. § 7409(b)(1). Once EPA has established NAAQS for criteria pollutants, the agency is obligated to review and revise the relevant NAAQS "at five-year intervals[.]" 42 U.S.C. § 7409(d)(1).

9. The Act requires the Governor of each state to submit to the EPA, not later than one year after promulgation or revision of a NAAQS, a list designating all areas (or portions thereof) in the State as nonattainment, attainment, or unclassifiable for that NAAQS. 42 U.S.C. § 7407(d)(1)(A). A nonattainment area is "any area that does not meet (or that contributes to ambient air quality in a nearby area that does not meet) the [NAAQS] for the pollutant." *Id.* at § 7407(d)(1)(A)(i). An attainment area is "any area . . . that meets the [NAAQS] for the pollutant." *Id*. at § 7407(d)(1)(A)(ii). An unclassifiable area is "any area that cannot be

5

classified on the basis of available information as meeting or not meeting the [NAAQS] for the pollutant." *Id*. at § 7407(d)(1)(A)(iii).

10. EPA must promulgate the designations of all areas (or portions thereof) "as expeditiously as practicable, but in no case later than two years from the date of promulgation of the new or revised [NAAQS]." 42 U.S.C. § 7407(d)(1)(B)(i). "Such period may be extended for up to one year in the event the Administrator has insufficient information to promulgate the designations." *Id*. If the Governor of a state "fails to submit the list" of designations required by 42 U.S.C. §7407(d)(1)(A) in whole or in part, 42 U.S.C. § 7407(d)(1)(B)(ii) requires the Administrator, to (as part of the action required by 42 U.S.C. §7407(d)(1)(B)(i)) promulgate the designation that the Administrator deems appropriate for any area (or portion thereof) not designated by the State. 42 U.S.C. § 7407.

11. Thus, at the outside, EPA must promulgate designations for all areas of every state within three years after the promulgation of a new or revised NAAQS. 42 U.S.C. § 7407(d)(1)(B). Within the same time frame, the Administrator must publish notice in the Federal Register promulgating the designations required by 42 U.S.C. § 7407(d)(1)(B)(i)&(ii). 42 U.S.C. §§ 7407(d)(1)(B)(i), 7407(d)(2)(A).

12. Promulgation of nonattainment designations triggers deadlines for states to submit plans for attaining the new or revised NAAQS for which the designations are made. For $SO_2$, states must submit such nonattainment SIPs for areas designated nonattainment within 18 months of the designation, and those plans must provide for attainment of the NAAQS as expeditiously as practicable, but no later than 5 years from the date of a nonattainment designation. 42 U.S.C. §§ 7514(a), 7514a(a).

6

13. Within 60 days of the Administrator's receipt of a nonattainment SIP, but no later than 6 months after the date, by which a State is required to submit the plan or revision, the Administrator must determine whether the minimum criteria established pursuant to Clean Air Act section 110(k)(1)(A) have been met.  42 U.S.C. § 7410(k)(1)(B).  Where a state fails to submit a required nonattainment SIP, the minimum criteria cannot have been met and EPA must make a "finding of failure to submit" determination stating so within six months of the submittal due date.  *Id*.

14. A finding of failure to submit a required plan then triggers an obligation for EPA to promulgate a Federal implementation plan ("FIP") "at any time within 2 years after the Administrator finds that a State has failed to make a required submission."  42 U.S.C. 7410(c)(1)(A).

15. If EPA fails to perform a non-discretionary duty, such as the duty to make a finding of failure to submit no later than 6 months after the date by which a State is required to submit a requisite nonattainment SIP, 42 U.S.C. § 7410(k)(1)(B), the Clean Air Act authorizes any person to bring suit to compel EPA to perform its duty.  42 U.S.C. § 7604(a)(2).

## VII.   FACTUAL BACKGROUND

16. $SO_2$ has numerous harmful effects on human respiratory systems, including narrowing of the airways that can constrict breathing (bronchoconstriction) and increased asthma symptoms.  Short-term exposure to $SO_2$ has also been linked to increased hospital and emergency room admissions for respiratory illness, particularly among children, the elderly, and asthmatics.

17. Based on scientific evidence that the pre-existing $SO_2$ NAAQS did not adequately protect people's health, on June 2, 2010, EPA promulgated a revision of that standard.  Primary

7

National Ambient Air Quality Standard for Sulfur Dioxide, 75 Fed. Reg. 35,520 (signed June 2, 2010, published June 22, 2010) (to be codified at 40 C.F.R. pts. 50, 53, and 58). Specifically, EPA established a new one-hour $SO_2$ standard at a level of 75 parts per billion. 40 C.F.R. § 50.17(a).

18. EPA has estimated that implementation of the revised $SO_2$ NAAQS would annually prevent up to 5,900 premature deaths, 3,900 nonfatal heart attacks, 54,000 cases of asthma exacerbation, and 290,000 work loss days.

19. Promulgation of the revised $SO_2$ NAAQS triggered the Administrator's nondiscretionary duty to promulgate and publish designations under the revised standard for all areas of every state pursuant to 42 U.S.C. §§ 7407(d)(1)(B)(i) and 7407(d)(2) as expeditiously as practicable, but not later than June 2, 2012, two years from promulgation of the revised $SO_2$ NAAQS on June 2, 2010.

20. On August 3, 2012, EPA announced that it was using its authority under 42 U.S.C. § 7407(d)(1)(B)(i) to extend by one year the deadline for promulgating area designations for the June 2010 $SO_2$ NAAQS, stating that"[w]ith this extension, the EPA is now required to complete initial designations for this NAAQS by June 3, 2013." Extension of Deadline for Promulgating Designations for the 2010 Primary Sulfur Dioxide National Ambient Air Quality Standard, 77 Fed. Reg. 46,295 (August 3, 2012).

21. On August 5, 2013, EPA published in the Federal Register its final air quality designations for a handful of areas in the United States for the 2010 primary $SO_2$ NAAQS. Air Quality Designations for the Revised $SO_2$ NAAQS, 78 Fed. Reg. 47,191 (August 5, 2013) (to be codified at 40 C.F.R. pt. 81). Specifically, EPA made area designations for only 29 areas in only

16 states, finding those areas to be in nonattainment for the standard based on monitored air quality data.  78 Fed. Reg. at 47,193.

22. The nonattainment designations for those 29 areas became effective on October 4, 2013.  78 Fed. Reg. at 47,197.  In accordance with the Clean Air Act, the affected 16 states were, thus, required to submit nonattainment SIPs that meet the requirements of sections 172(c) and 191-192 of the Clean Air Act and provide for attainment of the NAAQS as expeditiously as practicable but no later than October 4, 2018, to EPA within 18 months of the effective date of these designations: by April 6, 2015.  78 Fed. Reg. at 47,193.

23. Despite this clear mandate, most of the 16 states with designated nonattainment areas for the 2010 SO$_2$ NAAQS have failed entirely to submit the required nonattainment SIPs by the statutorily mandated deadline of April 6, 2015.  *See* National Status of State SIP Requirements, http://www3.epa.gov/airquality/urbanair/sipstatus/reports/so2__2010_so2_nonattainment_nsr_en bystate.html.  This failure to submit requisite nonattainment SIPs on the part of Arizona, Indiana, Iowa, Kentucky, Louisiana, Michigan, Montana, New Hampshire, Ohio, Pennsylvania, Tennessee, West Virginia, and Wisconsin continues as of the date of filing of this lawsuit.  *See id.*

24. This present lawsuit concerns 13 states containing designated nonattainment areas under the 2010 $SO_2$ NAAQS, as set forth in the table below:

| State | Nonattainment Area Name |
|---|---|
| Arizona | Hayden |
| Arizona | Miami |
| Indiana | Indianapolis |
| Indiana | Morgan County |
| Indiana | Southwest Indiana |
| Indiana | Terre Haute |
| Iowa | Muscatine |
| Kentucky | Campbell-Clermont Counties |
| Kentucky | Jefferson County |
| Louisiana | St. Bernard Parish |
| Michigan | Detroit |
| Montana | Billings |
| New Hampshire | Central New Hampshire |
| Ohio | Campbell-Clermont Counties |
| Ohio | Lake County |
| Ohio | Muskingum River |
| Ohio | Steubenville |
| Pennsylvania | Allegheny |
| Pennsylvania | Beaver |
| Pennsylvania | Indiana |
| Pennsylvania | Warren |
| Tennessee | Sullivan County |
| West Virginia | Marshall |
| West Virginia | Steubenville |
| Wisconsin | Rhinelander |

*See* EPA Final Nonattainment Areas for the 2010 $SO_2$ Standards Round 1 - July 2013, http://www3.epa.gov/so2designations/pdfs/july2013SO2nonattainmentcounties.pdf.

25. The 13 states identified above have, to date, failed to submit the required nonattainment SIPs to EPA. On October 6, 2015, the statutory six month deadline for EPA to

10

make a finding of failure to submit passed, and to date EPA has made no determinations that any states have failed to submit the required state implementation plan.

26. The Administrator was required by law to make findings of failure to submit the required complete SIPs to meet the requirements of the Clean Air Act for attaining the 2010 $SO_2$ NAAQS for the nonattainment areas in the 13 states identified above no later than six months after the April 6, 2015 date by which the states were required to submit their nonattainment SIPs, and to publish Federal Register notices of such findings of failure to submit. *See* 42 U.S.C. 7410(k)(1)(B).

27. Because the Administrator has failed to make findings of failure to submit nonattainment SIPs that meet the requirements of sections 172(c) and 191-192 of the Clean Air Act and provide for attainment of the NAAQS as expeditiously as practicable but no later than October 4, 2018 for the above-identified nonattainment areas within 6 months of April 6, 2015— i.e. by October 6, 2015—and to publish notice of such findings of failure to submit, the Administrator is in violation of her nondiscretionary duty under 42 U.S.C. 7410(k)(1)(B).

## VIII.   CLAIM FOR RELIEF

28.     Sierra Club incorporates the allegations in all preceding paragraphs of this Complaint as if set forth in full herein.

29.     The Administrator had a mandatory duty to make a finding of failure to submit nonattainment SIPs for nonattainment areas in 13 States—Arizona, Indiana, Iowa, Kentucky, Louisiana, Michigan, Montana, New Hampshire, Ohio, Pennsylvania, Tennessee, West Virginia, and Wisconsin—to meet the requirements of the Clean Air Act for attaining the 2010 $SO_2$ NAAQS no later than 6 months after the April 6, 2015 SIP submittal deadline, i.e. by October 6, 2015. *See* 42 U.S.C. § 7410(k)(1)(B) ("Within 60 days of the Administrator's receipt of a plan

11

or plan revision, but no later than 6 months after the date, if any, by which a State is required to submit the plan or revision, the Administrator shall determine whether the minimum criteria established pursuant to subparagraph (A) have been met.").

30. It is now more than 6 months beyond the April 6, 2015 deadline for these 13 states to submit their nonattainment SIPs to EPA. *See* 78 Fed. Reg. at 57,193 ("The CAA directs states to submit these SIPs to the EPA within 18 months of the effective date of these designations, i.e., by April 6, 2015.")

31. As of the date of filing this Complaint, the Administrator has neither issued findings of failure to submit nonattainment SIPs required for the 2010 $SO_2$ NAAQS with regard to the aforementioned 13 states, nor has she published notice in the Federal Register of such findings.

32. Therefore, the Administrator has violated, and continues to violate, the Clean Air Act, 42 U.S.C. § 7410(k)(1)(B).

33. For all the foregoing reasons, this Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Clean Air Act's citizen suit provision. 42 U.S.C. § 7604(a). EPA's violations are ongoing, and will continue unless remedied by this Court.

34. Accordingly, an order from this Court is warranted declaring that the Administrator has failed to perform the above-referenced nondiscretionary acts and duties, and directing her to perform such acts and duties forthwith.

## IX.     REQUEST FOR RELIEF

WHEREFORE, Sierra Club respectfully requests that this Court enter judgment providing the following relief:

A) A declaration that the Administrator is in violation of the Clean Air Act with regard to her failure to perform the mandatory duties listed above to issue and publish findings of failure to submit nonattainment SIPs required for the 2010 $SO_2$ NAAQS as to the 13 states identified herein (i.e. Arizona, Indiana, Iowa, Kentucky, Louisiana, Michigan, Montana, New Hampshire, Ohio, Pennsylvania, Tennessee, West Virginia, and Wisconsin);

B) An order compelling the Administrator to perform her mandatory duties by an expeditious certain date;

C) An order retaining jurisdiction over this matter until such time as the Administrator has complied with her non-discretionary duties under the Clean Air Act;

D) An order awarding Sierra Club its costs of litigation, including reasonable attorneys' fees; and

E) Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: December 29, 2015        /s/ Zachary M. Fabish

Zachary M. Fabish
DC Bar Id. No. 986127
The Sierra Club
50 F Street NW, Eighth Floor
Washington, DC 20009
Tel: (202) 675.7917
zachary.fabish@sierraclub.org

Kathryn Amirpashaie
DC Bar Id. No. 1001491
Law Office of Kathryn M. Amirpashaie, PLC
406 Blue Ridge Avenue NE
Leesburg, VA 2017
Tel: (703) 771-8394
kmalawoffice@gmail.com

*Counsel for Plaintiff Sierra Club*