## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB,<br><br>        Plaintiff,<br><br>    v.<br><br>GINA MCCARTHY, in her official capacity as Administrator of the United States Environmental Protection Agency,<br><br>        Defendant. | Civil Action No. 15-2264 (CKK) |

## MEMORANDUM OPINION
(January 27, 2017)

Plaintiff Sierra Club filed this action to compel the Administrator of the United States Environmental Protection Agency ("EPA") to take certain actions mandated by the Clean Air Act ("CAA"), 42 U.S.C. § 7401 *et seq.* EPA took those actions on March 10, 2016, and at the parties' request, the Court subsequently dismissed the [1] Complaint as moot. *See* Order, ECF No. 14.

Presently before the Court is Plaintiff's [15] Motion for Attorney Fees and Costs under the Clean Air Act, 42 U.S.C. § 7604(d), which requests $25,371.50 in attorney fees, $440.16 in costs, and an additional $14,462.50 in so-called "fees for fees," or attorney fees incurred in seeking compensation for attorney fees. Upon consideration of the pleadings,[1]

---

[1] The Court's consideration has focused on the following documents:

- Motion of Sierra Club for Attorney Fees and Costs under the Clean Air Act, 42 U.S.C. § 7604(d), ECF No. 15 ("Fee Mot.");
- Defendant EPA's Memorandum of Points and Authorities in Opposition to Plaintiff Sierra Club's Motion for Attorney Fees and Costs, ECF No. 17 ("Opp'n Mem."); and
- Plaintiff Sierra Club's Reply Memorandum in Support of its Motion for Attorney Fees and Costs Under the Clean Air Act, 42 U.S.C. § 7604(d), ECF No. 18 ("Reply Mem.").

the relevant legal authorities, and the record as a whole, the Court **GRANTS IN PART** the Plaintiff's Motion, and awards attorney fees in the amount of $17,184.04, and costs in the amount of $440.16.

## I. BACKGROUND

The facts and procedural history of the underlying litigation are not in dispute. EPA establishes air quality standards for certain substances that cause or contribute to air pollution and which pose a danger to public health or welfare. When EPA issues new or revised air quality standards, it must, within three years, designate areas as either meeting or not meeting those new or revised standards ("attainment" and "non-attainment" areas). After EPA does so, states designated as including a non-attainment area must submit plans, known as State Implementation Plans ("SIP"), for meeting the new or revised air quality standards. Fee Mot. at 1.

For the air pollutant at issue here, sulfur dioxide, states must submit SIPs within 18 months of the EPA's designation. If a state does not submit an SIP within 6 months of the expiration of the 18-month period, EPA has a nondiscretionary duty to "publish in the Federal Register[] a 'finding of failure to submit' determination[, which . . .] triggers EPA's obligation to step in and create a Federal Implementation Plan . . . ." *Id.* at 9. Here, EPA issued revised air quality standards for sulfur dioxide in June 2010, and designated areas in 16 states as "non-attainment areas" in August 2013. Those states were then required to submit SIPs by April 2015, which 15 of the 16 failed to do. Accordingly, by October 2015, EPA had the statutory duty to "make the requisite findings of failure to submit" as to those states. EPA did not do so, which spawned the current litigation. *Id.*

Plaintiff first contacted EPA on October 14, 2015 and provided "notice that Sierra Club was planning on sending EPA a Notice of Intent [L]etter." *Id.* The next day, Plaintiff submitted the Notice of Intent Letter, which started a 60-day statutory waiting period before Plaintiff could file a lawsuit against EPA under the citizen-suit provisions of the CAA. After the 60-day period expired, and with no action taken by EPA, Plaintiff filed its Complaint on December 29, 2015. *Id.* at 4.

The initiation of the lawsuit was followed by a series of telephone and email conversations between Plaintiff's counsel and attorneys from the Department of Justice ("DOJ"), acting as counsel for EPA. First, on January 8, 2016, EPA counsel contacted Plaintiff's counsel "to introduce himself . . . [and] indicated that he had not yet had an initial conversation with EPA concerning the case, but planned on having this consultation soon." Fee Mot., Attach. 2, Fabish Decl. at 3. The time entry associated with this call describes it as "concerning [the] case and potential resolution." Fee Mot., Attach. 1, Amirpashaie Decl., Ex. 4. Second, on January 22, 2016, EPA counsel again contacted Plaintiff's counsel, and stated that EPA "would like to speak candidly with you about this matter, potentially to explore whether there is a possibility of a negotiated settlement." Fee Mot., Attach. 2, Fabish Decl., Ex. 3. That "candid" conversation occurred on February 16, 2016, after which "Sierra Club effectively ceased legal work on the substance of this case, in expectation of EPA actions." Fee Mot. at 5. Then, on March 10, 2016, EPA "signed a final rule fulfilling the nondiscretionary duty that Sierra Club sought to enforce[,]" effectively mooting the lawsuit, and leading to the Fee Motion. Opp'n Mem at 3.

In addition to drafting the Notice of Intent Letter and the Complaint, and engaging in the various conversations just described, Plaintiff's counsel also worked on a summary

judgment motion and several written declarations in support of Plaintiff's Article III standing that, due to EPA's ameliorative actions, ultimately remained unfiled. Fee Mot. at 5, 11. According to the time entries before the Court, Plaintiff's counsel began work on the summary judgment motion on December 7, 2015, and continued to work on the motion until January 22, 2016. Fee Mot., Attach. 1, Amirpashaie Decl., Ex. 4. Similarly, work on the unfiled standing declarations extended from November 16, 2015 through January 22, 2016, much of which was delegated to Plaintiff's legal support staff. *Id.*

## II. <u>LEGAL STANDARD</u>

Under the Clean Air Act, the Court "may award costs of litigation (including reasonable attorney and expert witness fees) whenever it determines that such award is appropriate." 42 U.S.C. § 7604(d). "In order to award attorney fees under the Clean Air Act, a court must engage in a two-step inquiry, determining first whether the party seeking fees is the prevailing party, and second, whether the requested fees are reasonable." *Sierra Club v. Jackson*, 926 F. Supp. 2d 341, 346 (D.D.C. 2013) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Court determines a reasonable fee by "multiplying a reasonable [hourly] rate by the reasonable number of hours," a process known as the "lodestar method." *New Jersey v. E.P.A.*, 703 F.3d 110, 113 (D.C. Cir. 2012). In determining the fee award, the Court must endeavour to exclude hours which are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 424. Ultimately, the movant bears "the burden of demonstrating the reasonableness of each element of their fee request." *Am. Petroleum Inst. v. U.S. E.P.A.*, 72 F.3d 907, 912 (D.C. Cir. 1996).

### III. DISCUSSION

To succeed on the Fee Motion, Plaintiff must establish: (i) that it was the prevailing party in this action; (ii) that its requested hourly rates are reasonable; and (iii) that it seeks compensation for a reasonable number of hours. Here, EPA concedes that Plaintiff was a prevailing party and that Plaintiff's requested hourly rates are reasonable, and the Court agrees. Opp'n Mem. at 5 ("EPA does not dispute that some award of fees is 'appropriate' within the meaning of 42 U.S.C. § 7604(d) of the Clean Air Act. EPA also does not dispute the reasonableness of the hourly rates used to calculate Sierra Club's fee claim."). Plaintiff's requested hourly rates of $386/hour for attorney Zachary Fabish and $325/hour for attorney Kathryn Amirpashaie are based on the "commonly accepted" Laffey Matrix published by the United States Attorney's Office for the District of Columbia. *Wesby v. D.C.*, 189 F. Supp. 3d 31, 36 (D.D.C. 2016). Plaintiff also plainly achieved the benefit it sought in bringing this lawsuit. *See Envtl. Def. Fund, Inc. v. E.P.A.*, 716 F.2d 915, 919 (D.C. Cir. 1983) (finding that plaintiff was a prevailing party because EPA took the administrative action plaintiff sought, which was followed shortly by joint dismissal of the lawsuit).

Consequently, the only issue for the Court to decide is whether Plaintiff seeks compensation for a reasonable number of hours. That dispute concerns four areas of work undertaken by Plaintiff's counsel in relation to the litigation: (i) an unfiled motion for summary judgment; (ii) unfiled standing declarations; (iii) work related to the Notice of Intent Letter, Complaint, motion to dismiss, and communications with EPA counsel; and (iv) work on the Fee Motion and Reply Memorandum. With respect to the first two categories, EPA contends that the work was unnecessary and therefore should not be compensated. Opp'n Mem. at 6–9. With respect to the third category, EPA concedes that

the work was necessary, but contends that the number of hours expended by Plaintiff's counsel was excessive. *Id.* at 9–12. With respect to the final category, EPA contends that no additional compensation should be granted, but that if it is, Plaintiff's request for "fees for fees" should be reduced by over 70 percent. *Id.* at 12–13. The Court addresses each category of work in turn.

### A. Reasonableness of Hours Expended on the Unfiled Summary Judgment Motion

The crux of EPA's opposition to Plaintiff's fee request for the unfiled summary judgment motion is its contention that the motion was unnecessary given the posture of this case at the time Plaintiff's work was performed, and that any time expended on the motion was therefore unreasonable and should not be compensated. The Court agrees. Plaintiff seeks compensation for 23.1 hours of attorney time expended on the motion. Reply Mem. at 4. According to the time records before the Court, work began on the motion on December 7 and December 8, 2015, well before the Complaint was filed on December 29, 2015. Fee Mot., Attach. 1, Amirpashaie Decl., Ex. 4. That work continued on January 12, 2016, and extended through January 22, 2016, meaning the hours that post-date the filing of the Complaint also post-date the January 8, 2016 telephone call that Plaintiff's counsel self-describes as "concerning [the] case and potential resolution." *Id.* Moreover, all of Plaintiff's work was performed more than one month before EPA was required to answer or otherwise respond to the Complaint on March 11, 2016. Fee Mot. at 1. Although Plaintiff is correct that it was entitled to file a motion for summary judgment "at any time until 30 days after the close of all discovery," Fed. R. Civ. P. 56(b), the inquiry before the Court is whether the hours expended by Plaintiff's counsel on this task were necessary and reasonable. Given that Plaintiff had scant indication that EPA would aggressively litigate

this lawsuit, and even less indication that it would not have ample opportunity to pursue a dispositive motion after EPA's response was due and efforts to informally resolve the case were exhausted, the Court finds that work on a summary judgment motion in the very early stages of this litigation was unreasonable and should not be compensated. *See Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1270 (S.D. Ala. 2013) ("it was [un]reasonable to commence work and billings on a [summary judgment] motion five months before the governing deadline").

In reaching this conclusion, the Court notes the distinctions between the factual circumstances here and other federal fee-shifting decisions that have granted compensation for work performed on unfiled motions. *See King v. Palmer*, 950 F.2d 771, 776 n.3 (D.C. Cir. 1991) ("the [Supreme] Court has said that its standards for determining 'reasonable' fees apply to all federal statutes awarding 'reasonable' attorney's fees to a 'prevailing party'"). First, in *Roberts v. City & Cty. of Honolulu*, United States District Judge Alan C. Kay Sr. found that plaintiff was entitled to fees for an unfiled motion for preliminary injunction. No. 15-00467 ACK-RLP, 2016 WL 3136856, at *8 (D. Haw. June 3, 2016) (action pursuant to 42 U.S.C. § 1983). In so finding, however, Judge Kay emphasized that the preliminary injunction motion before him "served a different function" from unfiled motions in other cases, as it was combined with a demand letter that threatened the filing of the motion unless plaintiff's terms were met. By informing opposing counsel that they would file the motion unless their terms were quickly met, plaintiff's counsel were able to "obtain expedited relief for their client." *Id*. By contrast, there is no indication here that Plaintiff's counsel informed EPA of its work on the summary judgment motion, or that Plaintiff's counsel otherwise used the prospective motion as a bartering chip to expedite

proceedings. *See Supler v. FKAACS, Inc.*, No. 5:11-CV-229-FL, 2013 WL 6713120, at *3 (E.D.N.C. Dec. 19, 2013) ("Plaintiff conclusorily insists that the unfiled motion for summary judgment facilitated these negotiations, but does not explain how. . . . Because plaintiff has not demonstrated that reasonable counsel would have expended time on a motion for summary judgment with the case in the posture it was in, the court will exclude the . . . hours spent on the motion . . . .").

Second, Plaintiff relies on *Charlebois v. Angels Baseball LP* for the proposition that work on the unfiled summary judgment motion should be compensated. 993 F. Supp. 2d 1109, 1125 (C.D. Cal. 2012) (action pursuant to Americans with Disabilities Act of 1990). Although the *Charlebois* court found that "extensive authority supports awarding fees for time spent on unfiled motions," its holding rested on the fact that "Defendants ch[ose] to negotiate a settlement days before the deadline for filing [the] summary judgment motions [at issue] . . . ." *Id.* The Court recognizes that it may be reasonable and necessary to draft a motion where a deadline is pressing, even if settlement negotiations ultimately render the motion unnecessary. Here, however, Plaintiff was not faced with any deadline to file a summary judgment motion, or any other exigency that the Court can glean from the record. Moreover, of the three cases that the *Charlebois* court cited in support of the proposition that "extensive authority" supports compensation for unfiled motions, the first two are factually inapposite. *See Marbled Murrelet v. Pac. Lumber Co.*, 163 F.R.D. 308, 327 (N.D. Cal. 1995) (compensating hours spent on an unfiled amended complaint and motion for reconsideration because plaintiff had "written off any time spent on these documents which was not related to [its] final case"); *Rux v. Starbucks Corp.*, No. CIVS-05-2299 MCE EFB, 2007 WL 1098550, at *3 (E.D. Cal. Apr. 12, 2007) (awarding fees for work performed on

an unfiled joint statement regarding a discovery dispute because it was only rendered unnecessary by "defendant's last minute agreement" to produce the relevant materials). The third case, although it awarded fees for an unfiled *Daubert* motion in a matter that was disposed of on summary judgment, it only did so against a private litigant, and not the federal government, as would be the case here. *ExperExchange, Inc. v. Doculex, Inc.*, No. C-08-03875 JCS, 2010 WL 1881484, at *9 (N.D. Cal. May 10, 2010). In matters like the one at hand, the Court has "a special responsibility to ensure that taxpayers are required to reimburse prevailing parties for only those fees and expenses actually needed to achieve the favorable result. . . . [T]he willingness of a private client to pay a bill [does not] necessarily demonstrate[] that the charge was reasonable under the statutory definition and can therefore be automatically assessed against the government." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 975 (D.C. Cir. 2004) (quotation marks omitted). Accordingly, for all of the foregoing reasons, the Court shall disallow any fees requested in connection with the unfiled motion for summary judgment.

### B.  Reasonableness of Hours Expended on the Unfiled Standing Declarations

EPA also challenges Plaintiff's request for compensation for time spent by attorneys and legal staff in preparing unfiled Article III standing declarations. Importantly, however, EPA concedes that it was necessary and reasonable for Plaintiff's counsel to "assure themselves that they had a good faith basis for the allegations pled in the Complaint," including the allegations that provide the basis for Plaintiff's Article III standing. Opp'n Mem. at 8; *see* Complaint at ¶¶ 3–4 (alleging that Sierra Club has members in the affected states, and that the interests of those members have been harmed). The Court agrees with EPA's assessment. Although it was reasonable for Plaintiff's counsel to expend time to

assess their client's standing to bring this lawsuit, given the posture of this case, there does not appear to have been a compelling reason to draft standing declarations. Furthermore, although Plaintiff's counsel does not make clear what purpose those written declarations were intended to serve apart from assuring counsel of their client's ability to bring this lawsuit—a purpose for which written declarations were not necessary—the declarations presumably would have been used to either support or oppose a dispositive motion. *See, e.g.*, *Washington Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (noting that Sierra Club provided affidavits to support its standing amidst competing dispositive motions). However, as provided in the preceding section, it was not necessary or reasonable under the circumstances of this case to begin work on a dispositive motion. Accordingly, the Court shall not award fees related to the actual drafting of the standing declarations, but shall compensate 3.15 hours of attorney time spent prior to the filing of the Complaint that appears to have been related to assessing standing.[2] Because the work of Plaintiff's legal support staff related solely to the drafting of standing declarations, all of it shall be disallowed.

### C. Reasonableness of Time Spent on the Notice of Intent Letter, Complaint, Motion to Dismiss, and Communications with EPA Counsel

With respect to the other work performed by Plaintiff's counsel in the course of this litigation (apart from work related to the Fee Motion and Reply Memorandum), EPA contends that although the work was necessary, the amount of time expended was excessive. Opp. Mem. at 9. After removing from Plaintiff's fee request the hours that the

---

[2] Fee Mot., Attach. 1, Amirpashaie Decl., Ex. 4 (Time entry on November 16, 2015, "Prepare for call with Sierra Club re: nation-wide legal support for standing declarations," .27 hours; and time entry on December 14, 2015, "Legal research re CAA standing declaration requirements for this case; declaration work," 2.88 hours.).

Court has disallowed in the preceding two sections, and apart from Plaintiff's request for "fees for fees," which is addressed below, the remaining requests stand as follows, broken down by attorney and category of work.

| Attorney | Category of Work | Hours Requested |
|---|---|---|
| Zachary Fabish | Complaint | 3.60 |
| | Communications | 3.06 |
| | Motion to Dismiss | 0.90 |
| Kathryn Amirpashaie | Notice of Intent Letter | 3.24 |
| | Complaint | 7.79 |
| | Communications | 2.07 |
| | Motion to Dismiss | 8.82 |

This represents a total of 29.48 hours of attorney time, which is approximately 7 hours more than EPA contends was reasonable for these tasks. *See* Opp. Mem. at 11. However, EPA has pointed to no particular inefficiencies by Plaintiff's counsel that warrant a further reduction of fees in connection with these tasks. Moreover, Plaintiff's counsel has already taken steps to "exclude[] hours for potentially overlapping tasks" between the two attorneys, and has further "reduced all recoverable attorney time by 10 percent." Fee Mot. at 12. Accordingly, the Court finds that a further reduction in hours is not warranted, and that 29.48 hours of attorney time for these tasks is a reasonable amount. *See MacClarence v. Johnson*, 539 F. Supp. 2d 155, 161 (D.D.C. 2008) (refusing an across-the-board reduction of hours where the EPA did not point to specific inefficiencies that warranted the reduction).

**D.   Reasonableness of Time Spent on the Fee Motion and Reply Memorandum**

Plaintiff's counsel also requests compensation for its work on the Fee Motion and Reply Memorandum. As a threshold matter, the Court disagrees with EPA's contention, Opp'n Mem. at 13,  that no compensation should be awarded for Plaintiff's efforts to

recover attorney fees. *See Jackson*, 926 F. Supp. 2d at 351 ("Where a party's motion for attorney fees is successful, the party is entitled to recover fees for fees."). Assuming fees for fees are awarded, EPA also contends that Plaintiff's fee request for the Fee Motion should be reduced in proportion to the percentage of fees actually recovered. In EPA's estimation, that calls for a reduction of over 70 percent. Opp'n Mem. at 13. However, because Plaintiff was successful on approximately 50 percent of the issues raised in its Fee Motion, and because the Court shall award approximately 50 percent of the attorney fees that Plaintiff sought,[3] the Court finds that only a 50 percent reduction is warranted. *See Jackson*, 926 F. Supp. 2d at 351 (awarding 50 percent of the requested fees in connection with a fee motion where plaintiff was successful on 50 percent of the issues). Accordingly, Plaintiff's request in connection with the Fee Motion is reduced from 25.1 hours to 12.55 hours.

Plaintiff's counsel also requests compensation for 19.4 hours of attorney time in connection with the Reply Memorandum. After reviewing the Reply Memorandum, the Court finds that even a 50 percent reduction in the requested hours would result in an excessive fee award. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) (indicating that "exorbitant" fees for fees applications can be discounted by the district court). Given the overlap of issues between the Fee Motion and the Reply Memorandum, the Court finds that a reasonable number of hours is half of those that were reasonable for the Fee Motion, or 6.275 hours. Accordingly, Plaintiff's counsel is entitled to compensation for a total of 18.825 hours in connection with the Fee Motion and Reply Memorandum.

---

[3] The precise figure is 43 percent.

## IV. CONCLUSION

For the reasons set forth above, the Court awards attorney fees in the amount of $17,184.04, which results from the following calculations.

| Attorney | Category of Work | Hours Awarded |
|---|---|---:|
| Zachary Fabish | Complaint | 3.60 |
| | Communications | 3.06 |
| | Motion to Dismiss | 0.90 |
| | Subtotal | 7.56 |
| | Fees (Subtotal x. $386/hour) | $2,918.16 |
| Kathryn Amirpashaie | Notice of Intent Letter | 3.24 |
| | Complaint | 7.79 |
| | Communications | 2.07 |
| | Motion to Dismiss | 8.82 |
| | Standing | 3.15 |
| | Fee Motion and Reply | 18.83 |
| | Subtotal | 43.90 |
| | Fees (Subtotal x. $325/hour) | $14,265.88 |
| | **Total Fees** | **$17,184.04** |

As EPA concedes that Plaintiff's requested costs should be paid in full, Opp'n Mem. at 2, the Court also awards costs in the amount of $440.16.

An appropriate Order shall accompany this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge